IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRAIG GOETTIG, AMIE GOETTIG, LONI GOETTIG, JENNIFER BELL,<br><br>        Plaintiffs,<br><br>    vs.<br><br>FS LANAI INC., ET AL.,<br><br>        Defendants. | Civ. No. 20-00325 JMS-RT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FS LANAI INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 94 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FS LANAI INC.'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 94**

## I. INTRODUCTION

Defendant FS Lanai Inc. ("Defendant") moves for summary judgment in this diversity suit in which Plaintiffs allege that Defendant's negligence was a legal cause of Plaintiff Craig Goettig's ("Goettig") paralysis and spinal injuries that occurred on November 16, 2019 at Hulopo`e Beach on Lanai, while Goettig was a guest at the Four Seasons Resort Lanai (the "Resort"). Defendant's Motion makes two specific arguments:

   1.  Hulopo`e beach does not "front" the Four Seasons Resort Lanai, within the meaning of *Hawaii Revised Statute* ["HRS"] § 486K-5.5, as required for claims brought pursuant to [HRS] § 486K-5.5; and

      2.      Plaintiff [Goettig] knew that the wave at Hulopo`e beach broke in shallow water before he dove headfirst into the shallow water.

ECF No. 94 at PageID # 552; *see also* ECF No. 94-2 at PageID # 576.

Based on the following, the court GRANTS the Motion in limited part and DENIES it in part. The court dismisses a negligence claim to the extent it is based on federal common law. But, as to other negligence-based claims, genuine issues of material fact exist, both as to whether Hulopo`e Beach is "fronting" the Resort and as to whether Goettig had knowledge of the allegedly dangerous shorebreak.

## II. <u>DISCUSSION</u>

The parties are familiar with the factual record, and the standard applicable to a motion under Federal Rule of Civil Procedure 56. Having analyzed the record and heard Defendant's Motion on January 10, 2022, the court thus proceeds directly to the issues, discussing only the facts necessary to rule on the Motion and to set the ruling in context.

The Amended Complaint asserts negligence based on Defendant's alleged failure to warn Goettig of an unreasonably dangerous condition (allegedly, "the existence of shorebreak which had caused paralysis and other similar injuries to Hotel guests," ECF No. 20 at PageID # 49) in the ocean at Hulopo`e Beach—a condition allegedly known to the Resort but not to Goettig, *id.* at PageID ## 49-50.

Although not separated into specific counts, the Amended Complaint fairly alleges negligence based on three sources of a duty owed to Plaintiffs—Hawaii statutory law, federal common law, and state common law. Specifically, it alleges:

> 29. The conduct of the Hotel violated [HRS] 486K-5.5 which states:
>
>> [§ 486K-5.5]. Hotelkeeper's liability limited for certain beach and ocean activities
>>
>> In a claim alleging injury or loss on account of a hazardous condition on a beach or in the ocean, a hotelkeeper <u>shall be liable</u> to a hotel guest for damages for personal injury, death, property damage, or other loss resulting from the hotel guest going onto the beach or into the ocean for a recreational purpose, including wading, swimming, surfing, body surfing, boogie boarding, diving, or snorkeling, only when such loss or injury is caused by the hotelkeeper's failure to warn against a hazardous condition on a beach or in the ocean, known, or which should have been known to a reasonably prudent hotelkeeper, and when the hazardous condition is not known to the guest or would not have been known to a reasonably prudent guest. A hotelkeeper owes no duty and shall have no liability for conditions which were not created by the hotel to a person who is not a guest of the hotel for injury or damage resulting from any beach or ocean activity.
>>
>> As used in this section, "beach" means the beach fronting the hotel, and "hotel guest" means a guest of that particular hotel and other persons occupying the assigned rooms. (emphasis added)[.]

> 30. The conduct of [the] Hotel violated applicable federal law decided in [*Tarshis v. Lahaina Inv. Corp.*, 480 F.2d 1019 (9th Cir. 1973)].
>
> 31. The conduct of [the] Hotel, mentioned above, was negligent.

ECF No. 20 at PageID ## 50-51.

Initially, to the extent that Paragraph 30 alleges a negligence cause of action based on federal common law, it fails to state a claim—there is no applicable federal law discussed in *Tarshis* (which analyzed similar facts regarding injuries at a beach that are at issue here), and any duties discussed in that case would have been based on state law. *See, e.g.*, *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981) ("[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in . . . narrow areas."); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law."). At the hearing on the Motion, Plaintiffs' recently-retained co-counsel forthrightly conceded that the Amended Complaint was not meant to allege a federal claim, and that it should be dismissed if it could be read to assert one based on federal common law. Accordingly, the Motion is GRANTED to the extent Plaintiffs allege a negligence claim based on federal law (even if *Tarshis* could be relevant towards interpreting state law).

Plaintiffs' other negligence-based claims, however, remain. In this regard, case law has interpreted Hawaii law to have two (overlapping) sources for

a hotel's duty to warn of hazardous conditions on a beach or in the ocean: HRS § 486K-5.5 and more general state common law principles. *See Rygg v. Cnty. of Maui*, 98 F. Supp. 2d 1129, 1135-37 (D. Haw. 1999). The parties do not dispute *Rygg*'s interpretation of Hawaii law (at least as to its conclusion that the statute did not abrogate common law principles regarding a hotel's duty to warn), and in any event, the court agrees with *Rygg* on that point.[1]

A.   Statutory Liability—Whether Hulopo`e Beach Is "Fronting" the Resort

Under the plain language of the first sentence of § 486K-5.5, liability of "a hotelkeeper . . . to a hotel guest for damages . . . resulting from the hotel guest going onto the beach or into the ocean for a recreational purpose" arises "only when such loss or injury is caused by the hotelkeeper's failure to warn against a hazardous condition *on a beach* or in the ocean, known, or which should have been known to a reasonably prudent hotelkeeper, and when the hazardous condition is not known to the guest or would not have been known to a reasonably prudent

---

[1] Under *Rygg*, the primary purpose of § 486K-5.5 was to restrict or immunize a hotel's liability for beachfront conditions against claims of non-guests or "casual passersby who have no nexus with the hotel." 98 F. Supp. 2d at 1136. That is, the statute otherwise allows potential liability for failure to warn of dangers of certain beach "front" activities if a victim was a hotel guest. But, when considering the entire statute and its legislative history, *Rygg* concluded that the statute did not abrogate the existing common law duty to warn of hazardous conditions at other "places in or about the hotel's premises as the hotel's guests may be reasonably expected to go during their visit." *Id.* at 1137. Such a common law duty is not limited to beaches "fronting" the hotel, but rather is limited to injuries that are "foreseeable." *Id.* at 1138.

5

guest." *Id.* (emphasis added). And for the statute's purposes, "beach" is defined as "the beach fronting the hotel." *Id.*

Defendant thus argues that it is undisputed that Hulopo`e Beach is not "fronting" the Resort, and therefore Defendant can have no liability to Plaintiffs under § 486K-5.5. The court disagrees—there are genuine issues of material fact as to whether the beach is "fronting" the Resort.

Defendant relies on *Rygg*'s conclusion that "the term 'fronting' clearly requires that the hotelkeeper's property adjoin or otherwise be contiguous with the beach." 98 F. Supp. 2d at 1133. Defendant argues that Hulopo`e Beach is a 5- to 8-minute walk from the Resort—the ocean in "front" of the main part of the Resort is a rocky shoreline—where the sandy beach and water is physically separated from the Resort by Hulopo`e Beach Park, *see* ECF No. 103-4 at PageID # 744, which is "controlled and maintained by Pulama Lanai," ECF No. 91-2 at PageID # 484 (Declaration of Chad Campbell). That is, according to Defendant, the Resort does not "adjoin" the beach and is not "contiguous with the beach."[2]

But Plaintiffs present evidence that Hulopo`e Beach is connected to the Resort by a path used and controlled by the Resort with a purpose of inviting and encouraging hotel guests to use Hulopo`e Beach. *See, e.g.*, ECF No. 103-4 at

---

[2] This court does not read *Rygg* as imposing an absolute physical metes-and-bounds test for "fronting." *Rygg* itself reasoned that the term must be considered in context, 98 F. Supp. 2d at 1133, and the facts in *Rygg* (involving a major county road and beach park completely separating the hotel and the beach across the street) are distinguishable from those at issue here.

6

PageID ## 744-45; ECF No. 103-5 at PageID # 755.  The Resort's own map depicts Hulopo`e Beach as a "key location" of the Resort, and the Resort maintains its own "beach kiosk" there that itself could be considered part of the Resort.  *See* ECF No. 103-12 at PageID # 803.  That is, the Resort essentially *treats* Hulopo`e Beach as its beach, "fronting" the Resort.  *See, e.g.*, ECF No. 103-4 at PageID ## 746-48; *cf.* ECF No. 103-6 at PageID # 756 (tourism website describing Hulopo`e Beach Park as "fronting the Four Seasons Resort Lanai").  Such a nexus between the beach and Resort could be interpreted to mean that they are "contiguous" to or "adjoining" each other.  And, even when construing the terms "contiguous" and "adjoining" strictly, a hotel map appears to depict some parts of the sandy areas of the beach that might physically touch Resort property—the geographic parameters are unclear even considering Chad Campbell's declaration at face value.  *See* ECF No. 91-2 at PageID # 484 (Campbell declaring that "Hulopo`e Beach Park lies between the Four Seasons Resort Lanai's grounds and Hulopo`e beach"); ECF No. 103-12 at PageID # 803 (map); Google maps, https://goo.gl/maps/NYsvF61P7tjsGqwu9 (search "Four Seasons Resort Lanai," satellite view) (last accessed January 27, 2022).[3]  That is, there is a genuine issue of material fact as to whether Hulopo`e Beach "fronts" the Resort.

---

[3] "[The court] take[s] judicial notice of a Google map and satellite image as a 'source[ ] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining the
(continued . . .)

**B.     Common Law Liability—Whether Goettig Knew of the Hazard**

There are also questions of fact that would preclude summary judgment as to a negligence claim based on the more general duty-to-warn standards under Hawaii common law. Under those general standards, "'an owner's duty to his invitees extends to such places in or about the premises as his invitees may reasonably be expected to go in the course of the visit.'" *Rygg*, 98 F. Supp. 2d at 1138 (quoting *Littleton v. State of Hawaii*, 66 Haw. 55, 68, 656 P.2d 1336, 1345 (1982)). *Rygg* denied a hotel's motion for summary judgment, reasoning that there was evidence "from which a reasonable jury might conclude that it was foreseeable that Plaintiffs and other hotel guests might go to Kamaole II Beach Park," *id.*, even if that park and beach did not "front" the hotel. That evidence—similar to the evidence from the Resort in this case—included references in the hotel's brochure that touted the hotel's location overlooking the beach. *See id.* That is, it was foreseeable that hotel guests "might go to Kamaole II Beach Park and be injured there by dangers of which [the hotel] knew or should have known." *Id.*

Here, like in *Rygg*, there is evidence that the Resort knew of a dangerous shorebreak at Hulopo`e Beach that is not obvious to its guests (where several other spinal-type injuries have recently occurred) and was not known by

---

(. . . continued)
general location of the [Resort and Hulopo`e Beach]." *United States v. Perea-Rey*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (quoting Fed. R. Evid. 201(b)).

Goettig.  *See, e.g.*, ECF No. 103-9 at PageID ## 766-88; ECF No. 103-16 at PageID ## 891-906.  It clearly was foreseeable that Resort guests would use Hulopo`e Beach—the Resort set up and maintained a kiosk at that location.

        Defendant, however, argues that Goettig actually knew of the dangerous condition and it therefore had no duty to warn him.  Specifically, it argues that the record is undisputed that Goettig "knew that the wave at Hulopo`e beach broke in shallow water before he dove headfirst into the shallow water."  ECF No. 94 at PageID # 552.  It points out that Goettig testified at his deposition that he had previously been in the ocean for ten to fifteen minutes at the same place as where he was eventually injured.  He knew that the water was "waist deep."  *See* ECF No. 95-9 at PageID ## 647-49; ECF No. 103-2 at PageID # 731.  And Defendant argues that Goettig was injured when he intentionally dove into a wave knowing it was shallow, *see* ECF No. 104 at PageID ## 916-18—similar to how someone might be seriously injured by diving into a shallow pool.

        But, as Plaintiffs point out, their theory of liability is not that shallow water itself is a dangerous condition that the Resort should have warned against.  Rather, it is that the Resort was negligent in warning (or failing to warn) of the dangerous *shorebreak* at Hulopo`e Beach where it knew of the unobvious dangerous condition.  Even if Goettig knew the water was shallow, that does not necessarily mean that he—a visitor from Minnesota—knew of the dangerous

9

shorebreak condition with Hawaii's waters. The allegedly dangerous condition is described by one of Plaintiffs' proffered experts as follows:

> In a process called shoaling, surging breakers rise abruptly in shallow water near the shore as a result of the fact that the water becomes deeper rapidly away from shore. This phenomenon is also known as "shorebreak" and has the unfortunate potential to topple a bather upside down near shore and drive them head first into the ocean floor, with the resulting concussive forces radiating from the head up the spine. A shorebreak wave can impact and injure a bather even while he/she is wading in previously very shallow water of only 1 or 2 feet deep. Significantly, the hazard from shorebreak is very deceiving to an inexperienced swimmer, since the wave face height is often no more than 2 to 3 feet . . . . This would apply to Hulupo`e [sic] beach where on the day of Mr. Goettig's injury, the Four Seasons Resort at Lanai's Beach attendants advised existing shorebreak to be flat to 2 ft.

ECF No. 103-15 at PageID # 861.[4]  And there is evidence, viewed in the light most favorable to Plaintiffs, that Goettig did not know about the dangers of shorebreak,

---

[4] Indeed, the Resort apparently does have a specific warning regarding the dangers of "shorebreak" that it includes on an in-room iPad Mini. *See* ECF No. 105-2 at PageID # 957 ("If waves are breaking near the shore area, be aware that they break in shallow water. This 'shorebreak' can cause a person to strike the sand or rocks and can result in serious injury. Do not turn your back to the ocean."). But Goettig denies or does not recall seeing an iPad Mini or that warning. *See* ECF No. 103-2 at PageID # 727. In any event, the warnings are not properly at issue here. Defendant's Motion does not argue that it properly warned Goettig, or that it otherwise fulfilled its duty to warn, presumably because it knows that whether it properly warned Plaintiffs would likely be a genuine issue of material fact. Rather, the Motion focuses specifically on Goettig's knowledge of the hazard.

even assuming that he knew that the water was shallow. *See, e.g.*, ECF No. 103-2 at PageID # 726.[5]

In arguing the Goettig knew about the danger, Defendant emphasizes Goettig's testimony describing how he was injured:

> Q. [Defense counsel]  So as you were just entering the water, what did you do?  Did you, from there, jump into the water; or did you just continue walking until the water became a certain depth?
>
> A. [Goettig] No.  A wave—a wave stacked up.  And instead of getting pushed back by it, I jumped into the wave.
>
> Q. Okay.  And you jumped into it head first?
>
> A. I can't recall if my hands were outreached or if it was just—It wasn't feet first.  It was forward.
>
> Q. Okay.  And when you say you jumped forward, were you—Was your back toward the beach at that point in time?
>
> A. Yes.
>
> Q. And do you recall whether or not you reached the bottom of the ocean when you jumped forward?
>
> A. I just remember the wave, you know, the wave crashing—the wave was crashing in, so I was jumping into it and heard a pop.

---

[5] In this regard, the court easily concludes that this case is distinguishable from *Pell v. HMS Kea Lani*, 820 F. App'x 538 (9th Cir. 2020), which affirmed the grant of summary judgment to a hotel in a beach-accident case.  In *Pell*, it was undisputed that the plaintiff knew about the danger of boogie-boarding, and it was undisputed that the hotel had warned him—even going so far as refusing to rent a boogie board to him.  *Id.* at 540.  Not so here.

ECF No. 95-5 at PageID # 613.

Based on Goettig's testimony, Defendant argues that "[t]his is not a 'shorebreak' case or a case where a plaintiff was unaware of the alleged hazard. Plaintiff [Goettig] erred and dove head first into water that he knew was too shallow[.]" ECF No. 94-1 at PageID ## 574-75. But even if the testimony establishes that Goettig knew that the water was shallow, it does not establish that he knew of the shorebreak at this location. Moreover, Defendant's argument actually contests *causation* of the injury, not Goettig's knowledge of the shorebreak condition. And causation—even if it were fairly part of Defendant's Motion—is a question of material fact based on the evidence in the record. Goettig's testimony, construed in the light most favorable to Plaintiffs, is consistent with an injury due to shorebreak ("a wave stacked up," "the wave was crashing in"), not just diving headfirst into shallow water. Lastly, as Plaintiffs argue, "[a]t most, the Four Seasons' argument [about diving headfirst] is an issue of contributory negligence that is inappropriate for summary judgment." ECF No. 102 at PageID # 701 n.6.

In short, there are genuine issues of material fact that preclude summary judgment as to a state common law claim of negligence.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant FS Lanai Inc.'s Motion for Summary Judgment, ECF No. 94, is GRANTED in limited part and DENIED in part.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 27, 2022.



　　　　　　　　　　　　　　　　 /s/ J. Michael Seabright
　　　　　　　　　　　　　　　　J. Michael Seabright
　　　　　　　　　　　　　　　　Chief United States District Judge

*Goettig v. FS Lanai Inc.*, Civ. No. 20-00325 JMS-RT, Order Granting in Part and Denying in Part Defendant FS Lanai Inc.'s Motion for Summary Judgment, ECF No. 94